**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SEDINA YOUNG,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **FLIX NORTH AMERICA, INC. d/b/a** | : | |
| **GREYHOUND LINES, INC.,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Sedina Young (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Flix North America, Inc. d/b/a Greyhound Lines, Inc. (hereinafter "Defendant"), for violations of the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

**<u>THE PARTIES</u>**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Philadelphia, PA.
3. Upon information and belief, Defendant Flix North America, Inc. d/b/a Greyhound Lines, Inc. is a major intercity bus transportation company with a location at 1001 Filbert Street, Philadelphia, PA 19107 and corporate headquarters located at 315 Continental Avenue, Dallas, TX 75207.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year relevant to the matter at issue.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. On or about April 20, 2024, Defendant hired Plaintiff in the position of Motorcoach Operator.

15. Plaintiff was well qualified for her position and performed well.

## PLAINTIFF APPLIED AND WAS APPROVED FOR FAMILY AND MEDICAL LEAVE ACT ("FMLA") LEAVE

16. On or about October 5, 2025, Plaintiff applied for Family and Medical Leave Act ("FMLA") leave due to mental exhaustion through Standard Insurance Company, Defendant's third-party leave administrator.

17. Plaintiff requested her FMLA leave to last until January 1, 2026.

18. Plaintiff's FMLA leave was due to mental exhaustion/burnout which is considered to be a serious health condition covered under the FMLA.

19. On October 15, 2025, Standard Insurance Company approved Plaintiff's FMLA leave until January 1, 2026.

**PLAINTIFF RETURNED TO WORK FROM HER FMLA LEAVE EARLY**

20. However, Plaintiff was forced to return to work from her FMLA leave early on or about December 9, 2025, due to financial hardship.

21. Plaintiff returned to work at full duty and without any medical restrictions.

**DEFENDANT PREVENTED PLAINTIFF FROM WORKING ADDITIONAL SHIFTS UPON HER RETURN FROM FMLA LEAVE**

22. Upon her return from FMLA leave, Amantuallah Lucas, Senior Area Driver Manager, refused to permit Plaintiff to pick up additional shifts and voluntary overtime assignments.

23. Prior to Plaintiff's FMLA leave, Lucas allowed Plaintiff to pick up additional shifts and voluntary overtime assignments without issue.

**DEFENDANT ASSIGNED PLAINTIFF TO OPERATE FULL RUNS BY HERSELF UPON HER RETURN FROM FMLA LEAVE**

24. In addition, Defendant assigned Plaintiff to operate full runs alone for entire shifts.

25. Defendant did not apply these restrictions and reassignments to motorcoach operators who had not taken FMLA leave including, but not limited to, Joel Williams, Christopher Patel and Elijah Ellis, Motorcoach Operators.

**PLAINTIFF WAS INVOLVED IN A MINOR ACCIDENT AT WORK**

26. On December 28, 2025, Plaintiff worked the New York shuttle assignment from 10:00 p.m. to 6:30 a.m. on December 29, 2025.

27. Plaintiff was the only shuttle driver working that night.

28. Due to being the only shuttle driver working, Plaintiff agreed to remain on duty past the end of her shift and to work until 11:00 a.m. on December 29, 2025.

29. At approximately 9:45 a.m. on December 29, 2025, Plaintiff was directed to operate a vehicle to a vendor servicing facility in Jersey City, NJ.

30. While she was at the vendor facility, Plaintiff to return a bus to the New York terminal so that the bus could be placed in service for an outbound schedule as per Defendant's procedures.

31. While Plaintiff drove the bus back to the terminal, a dump truck crossed the white line and struck the left mirror of Plaintiff's bus which caused it to crack.

32. Plaintiff was not at fault for the incident which was minor and did not involve any injuries.

**PLAINTIFF INFORMED DEFENDANT OF THE MINOR ACCIDENT**

33. Upon returning to the terminal at approximately 10:45 a.m. on December 29, 2025, Plaintiff reported the incident to Defendant's Maintenance Fleet Hotline via phone call.

34. Plaintiff followed Defendant's protocol in doing so.

35. Shortly afterwards, Defendant proceeded to immediately place Plaintiff out of service.

**PLAINTIFF WAS PLACED OUT OF SERVICE AND SCHEDULED FOR A MEETING REGARDING THE MINOR ACCIDENT**

36. On December 29, 2025, Lucas sent Plaintiff a text message directing her to call Lucas immediately.

37. Upon receiving the text message, Plaintiff called Lucas who informed her that she was being placed out of service immediately and that she needed to conduct a question and

answer session regarding the incident and to bring a union representative because discipline may be involved.

38. Plaintiff contacted several union shop stewards until Marcus Seabrook agreed to attend the meeting.

**PLAINTIFF ATTENDED THE MEETING**

39. On December 30, 2025, Plaintiff met with Lucas and Seabrook.

40. During the meeting, Lucas showed Plaintiff an approximate 20-second-long drive cam video, which depicted Plaintiff of speaking out loud, but did not depict her holding a phone or wearing earbuds or any type of headset.

41. Plaintiff was speaking to herself in the video and was not engaged in a telephone conversation.

42. Lucas informed Plaintiff that she would be contacted by 7:00 p.m. that evening.

**PLAINTIFF WAS INFORMED OF A TERMINATION HEARING**

43. Later that day, Seabrook informed Plaintiff via text message that Defendant's management wanted to meet with her in person the next day, on December 31, 2025, for a termination hearing.

**DEFENDANT TERMINATED PLAINTIFF**

44. On December 31, 2025, Plaintiff attended a meeting with Seabrook and Faith Mitchell, Union Representative/Motorcoach Operator, attending on her behalf.

45. Lucas proceeded to terminate Plaintiff allegedly due to violating Driver's Rule 2-12, Unnecessary Conversation or Distraction, for allegedly speaking on the phone while driving during the incident.

46. Plaintiff had not been speaking on the phone while driving during the incident.

47. Importantly, Defendant had not issued Plaintiff any disciplines prior to her termination.

**PLAINTIFF FILED A GRIEVANCE REGARDING HER TERMINATION, BUT DEFENDANT DENIED IT**

48. On or about January 5, 2026, Plaintiff filed a grievance with Michael Rodriguez, Union Vice President, regarding her termination.

49. A third step grievance hearing was scheduled for February 3, 2026, and it was then rescheduled to February 10, 2026.

50. However, Rodriguez did not appear for the grievance hearing on February 10, 2026.

51. The hearing was not rescheduled and Plaintiff's grievance was denied.

**DEFENDANT DID NOT TERMINATE MOTORCOACH OPERATORS WHO DID NOT TAKE FMLA LEAVE AND WHO COMMITTED SIMILAR OR WORSE INFRACTIONS**

52. In addition, Defendant did not terminate Motorcoach Operators who had not taken FMLA leave for accidents.

53. Elijah Ellis, Motorcoach Operator, had three (3) cell phone incidents while driving, but was not terminated.

54. Michael Barnes, Motorcoach Operator, and Mitchell were involved in an accident and were brought back to work.

55. James Anderson, Motorcoach Operator, was terminated on two (2) occasions, but was brought back to work each time following his grievance.

56. Upon information and belief, none of the aforementioned Motorcoach Operators exercised their rights under the FMLA.

57. Defendant retaliated against Plaintiff for utilizing her rights under the FMLA in violation of the FMLA.

58. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – RETALIATION**
**THE FAMILY AND MEDICAL LEAVE ACT OF 1993**

59. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

60. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

61. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for her own serious medical condition.

62. Plaintiff gave Defendant sufficient information to allow it to understand that she needed Intermittent leave for FMLA-qualifying reasons.

63. The retaliation occurred in the form of termination for utilizing her FMLA leave

64. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by terminating her employment.

65. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

66. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

67. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

68. Plaintiff demands judgment against Defendant for all available equitable relief including,

but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

69. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff requests this Honorable Court grant her the relief requested in her Prayer for Relief, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Sedina Young, requests that the Court grant her the following relief against Defendant:

(a) Damages for lost wages in the form of back- and front-pay;

(b) Liquidated damages;

(c) Reasonable attorneys' fees;

(d) Recoverable costs;

(e) Pre and post judgment interest;

(f) An allowance to compensate for negative tax consequences;

(g) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or

participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the FMLA.

(h) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(i) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable, legal, and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: September 14, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*